[Cite as *State v. Dallman*, 2018-Ohio-2670.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                               :

        Plaintiff-Appellant,         :

                                :

  - vs -

                                :

JAY A. DALLMAN,                    :

        Defendant-Appellee.       :

CASE NOS.  CA2017-11-056
              CA2017-11-057

O P I N I O N
7/9/2018

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case Nos. 2017 CRB 03005 and 2017 TRC 09951

D. Vincent Faris, Clermont County Prosecutor, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellant

Gary Rosenhoffer, 313 East Main Street, Batavia, Ohio 45103, for defendant-appellee

**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Clermont County Municipal Court granting a motion to suppress by defendant-appellee, Jay A. Dallman. For the reasons set forth, we reverse the judgment of the trial court.

{¶ 2} On June 30, 2017, Officer McMillan of the village of Batavia Police Department was on duty, in uniform, and in a marked cruiser, on eastbound State Route 32. McMillan was near the intersection of Bauer Road and State Route 32 in the village of

Batavia when he observed Dallman driving southbound on Bauer Road, within the village limits, across State Route 32. McMillan noticed Dallman's vehicle did not have a rear license plate. While in the village of Batavia, McMillan activated his overhead lights to initiate a traffic stop. Due to the landscape of Bauer Road, there was nowhere on the road to safely pull over Dallman. Thus, McMillan followed Dallman, who turned right onto Winemiller Lane, and then, immediately into a United Dairy Farmer (UDF) gas station parking lot. The traffic stop occurred approximately 50 to 100 feet outside the village of Batavia and within adjoining Batavia Township.

{¶ 3} During the stop, McMillan detected an odor consistent with an alcoholic beverage emanating from Dallman's vehicle and observed that Dallman's speech was slurred. Dallman informed McMillan he had consumed approximately five beers and that he did not have a valid driver's license. McMillan also observed an open beer bottle inside the vehicle. Based on this new information, McMillan administered several field sobriety tests, after which McMillan affected a warrantless arrest of Dallman and transported him to the police station. Upon arrival, Dallman submitted to a breathalyzer test, revealing a blood-alcohol-content ("BAC") of .220. McMillan issued Dallman citations and summonses for operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h), failure to display a license plate in violation of R.C. 4503.21(A), failure to reinstate license in violation of R.C. 4510.21(A), and open container in violation of R.C. 4301.62.

{¶ 4} Dallman entered a not guilty plea and subsequently filed a motion to suppress, claiming that the traffic stop and arrest were illegal as the officer conducted them outside his territorial jurisdiction and without an arrest warrant. Following a hearing on the motion on September 6, 2017, the trial court took the matter under advisement to allow the parties to brief the jurisdictional issue before the court, i.e., Dallman's warrantless arrest outside

the territorial jurisdiction of the village of Batavia by Officer McMillan. On October 25, 2017, the trial court set forth its decision on the record finding that McMillan was required to obtain a warrant under these circumstances and that the appropriate remedy was suppression of the evidence. On the same day, the trial court filed an entry granting Dallman's motion to suppress. The state appealed the trial court's decision.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS, AS THE OFFICER HAD JURISDICTION TO PULL APPELLEE OVER FOR A VIOLATION OF SECTION 4503.21 COMMITTED BOTH WITHIN THE OFFICER'S JURISDICTION AND ON A STREET IMMEDIATELY ADJACENT TO THE OFFICER'S JURISDICTION.

{¶ 7} Assignment of Error No. 2:

{¶ 8} THE TRIAL COURT ERRED IN DETERMINING THAT SUPPRESSION OF THE EVIDENCE WAS THE PROPER REMEDY FOR THE OFFICER FAILING TO FULLY COMPLY WITH SECTION 2935.03(E)(3).

{¶ 9} The state contends the trial court erred in finding that McMillan did not have authority to detain, arrest, and cite Dallman, for multiple traffic violations committed both in McMillan's territorial jurisdiction and on a street adjacent to his territorial jurisdiction.

{¶ 10} An appellate court's review of a motion to suppress presents a mixed question of law and fact. *State v. C.J.*, 12th Dist. Warren No. CA2017-06-082, 2018-Ohio-1258, ¶ 25. The trial court assumes the role of the trier of fact in ruling on a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Thus, an appellate court accepts the trial court's findings of fact, if such findings are supported by competent, credible evidence. *Id.* However, with respect to applying the appropriate legal standard, an appellate court conducts a de novo review.

- 3 -

*Id.*

## McMillan's Commencement of the Traffic Stop Based on Dallman's Failure to Display a Rear License Plate

{¶ 11}   R.C. 2935.03 is titled, "[o]fficer's authority to arrest without a warrant; pursuit outside jurisdiction," and sets forth the territorial jurisdiction in which a police officer may conduct an investigatory detention or arrest, stating, in pertinent part:

> (A)(1) [a] sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer of a township or joint police district * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township.

{¶ 12}   R.C. 2935.03(D) permits a police officer to pursue, arrest, and detain a person outside his territorial jurisdiction until a warrant can be obtained if all of the following apply:

> (1) The pursuit takes place without unreasonable delay after the offense is committed;
>
> (2) The pursuit is initiated within the limits of the political subdivision * * * within its territorial jurisdiction, * * * in which the peace officer is appointed, employed, or elected or within the limits of the territorial jurisdiction of the peace officer;
>
> (3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to [R.C.] 4510.036 * * *.

{¶ 13}   R.C. 2935.03(E)(3) states, in pertinent part, that in addition to the authority granted under R.C. 2935.03(A) and (B),[1]

---

1. R.C. 2935.03(B) authorizes a police officer to arrest and detain for specific acts of violence. *See State v. Hornsby*, 12th Dist. Clermont No. CA99-06-060, 2000 Ohio App. LEXIS 613, *4 (Feb. 22, 2000), discussing R.C. 2935.03(B).

> [a] police officer * * * appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed.

In turn, R.C. 2935.03(E)(1) grants such authority for violations of R.C. 4503.11, 4503.21, 4549.01, 4549.08 thru 4549.12, 4549.62, R.C. Chapter 4511, and R.C. Chapter 4513.

{¶ 14} McMillan conducted the traffic stop based on his observation in the village of Batavia and adjoining Batavia Township that Dallman failed to display a rear license plate, in violation of R.C. 4503.21. McMillan pursued Dallman and pulled him over in a UDF gas station parking lot, just crossing over into Batavia Township. Therefore, the traffic stop was extraterritorial.

{¶ 15} A violation of R.C. 4503.21 is a minor misdemeanor for which points are not chargeable pursuant to R.C. 4510.036; therefore, the extraterritorial authority provided by R.C. 2935.03(D) is inapplicable to this case. However, R.C. 2935.03(E)(1) lists a violation of R.C. 4503.21 as an offense for which extraterritorial authority is granted under R.C. 2935.03(E)(3) to an officer to arrest and detain until a warrant can obtained. Thus, pursuant to R.C. 2935.03(E)(1) and (3), McMillan had statutory authority for an extraterritorial arrest and detention for the failure to display a rear license plate offense since he found Dallman committing a violation on a road in Batavia Township that was located immediately adjacent to the boundaries of the village of Batavia where McMillan was employed.

{¶ 16} We now address McMillan issuing a citation in lieu of making an arrest for the failure to display a rear license plate offense. According to law, a person charged with committing a minor misdemeanor is not subject to arrest. R.C. 2935.26(A) provides that "[n]otwithstanding any other provision of the Revised Code, when a law enforcement officer

is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation * * *." In other words, R.C. 2935.26(A) mandates the issuance of a citation for a minor misdemeanor offense where a police officer is otherwise authorized to affect an arrest. Thus, R.C. 2935.03(E)(3) provides authority to arrest and detain for a minor misdemeanor, while R.C. 2935.26(A) mandates the issuance of a citation. The Criminal Rules resolve the discrepancy to the extent of any existing conflict between the procedures officers are authorized to undertake for the minor misdemeanor offense. (Footnote omitted.) *State v. Tate*, 59 Ohio St. 2d 50, 54 (1979) ("the Criminal Rules supersede the analogous statutes to the extent of any conflict"). Crim.R. 4(A)(3) provides that "[i]n misdemeanor cases where a law enforcement officer is empowered to arrest without a warrant, the officer may issue a summons in lieu of making an arrest, when issuance of a summons appears reasonably calculated to assure the defendant's appearance." *See also* Traf.R. 3(C).

{¶ 17} Accordingly, R.C. 2935.03(E)(1) and (3) provided McMillan statutory authority to conduct the extraterritorial traffic stop for the violation of R.C. 4503.21, and Crim.R. 4(A)(3) provided McMillan discretion to issue a citation and summons in lieu of making an arrest.

**The Arrest Occurred on Private Property**

{¶ 18} Both the trial court and Dallman placed emphasis on the fact that the arrest took place on private property. The trial court found that McMillan acted in violation of R.C. 2935.03(E)(3) when he arrested Dallman in the UDF parking lot located in Batavia Township. The trial court then went on to state that it based its decision on the fact that McMillan did not arrest Dallman until a warrant could be obtained as required by R.C. 2935.03(E)(3). While it is not clear whether the location of the arrest was a major consideration in the trial court's decision, Dallman asserts that McMillan violated R.C.

2935.03(E)(3) because "the arrest occurred outside the [v]illage limits in a private (UDF) parking lot and, as such, was not on a portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation."

{¶ 19}  The language contained in R.C. 2935.03(E)(3) does not legislate where the actual arrest must occur.  To the contrary, it merely gives a police officer extraterritorial authority to arrest if the police officer finds a person "violating any section or chapter of the Revised Code listed in division (E)(1) of this section on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed."  Therefore, the focus is not where the arrest took place, but rather whether a listed violation was committed on a street that is immediately adjacent to the municipality that appointed the police officer. Accordingly, as to the failure to display a rear license plate violation, we have already held that McMillan observed the violation on a street immediately adjacent to the village of Batavia and found the stop was proper.  We will now address whether McMillan had authority to arrest Dallman on the remaining charges.

**Dallman's Subsequent Arrest**

{¶ 20}  The state argues R.C. 2935.03(E)(1) and (3) also provide McMillan authority to arrest, detain, and charge Dallman for OVI, failure to reinstate license, and open container.  In so doing, the state contends that although McMillan was not aware of the facts and circumstances underlying these offenses until after the commencement of the traffic stop, one may infer Dallman also committed the offenses moments before the traffic stop. Thus, McMillan observed Dallman commit the offenses in the village of Batavia and adjoining Batavia Township; therefore, R.C. 2935.03(E) provided statutory authority to McMillan to arrest, detain, and charge Dallman for the offenses.  Additionally, the state asserts that once McMillan validly stopped Dallman for the license plate offense, he was

authorized to conduct further inquiry into whether Dallman was under the influence of alcohol based on a reasonable, articulable suspicion of intoxication.

{¶ 21} "The general common-law rule is that the power of a municipal police officer is limited to the boundaries of his municipality, and that he may not, even with a warrant, make an arrest outside his territory for a misdemeanor." *Fairborn v. Munkus*, 28 Ohio St.2d 207, 209 (1971). We found above that the license plate offense justified the extraterritorial traffic stop affected by McMillan pursuant to R.C. 2935.03(E). The next question posed by the state regards the offenses discovered by McMillan while carrying out the traffic stop, which ultimately resulted in Dallman's arrest.

{¶ 22} The state's assertion that Dallman did not become intoxicated and fail to reinstate his license in the limited time between McMillan's observation of the license plate violation and the commencement of the extraterritorial traffic stop is a logical inference to draw from the facts of this case. However, an officer must know the facts sufficient to constitute probable cause that a traffic violation occurred at the time the officer makes the stop. *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 10 (1996). At the time of the stop here, McMillan only had knowledge of facts sufficient to constitute the offense of driving without a rear license plate. Thus, R.C. 2935.03(E)(3) provided McMillan statutory authority to affect the extraterritorial traffic stop only for the license plate violation.

{¶ 23} McMillan, however, did not discover the facts supporting probable cause to make an arrest with respect to the remainder of the charged offenses until after the commencement of the extraterritorial traffic stop. Thus, pursuant to the express language of R.C. 2935.03(E)(3), the statute did not provide McMillan statutory authority to make a warrantless arrest of Dallman for such offenses. If the General Assembly intended the authority for extraterritorial traffic stops to apply to offenses discovered after the stop commences, then it could have included language specifically providing for such intention.

*See State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 16 (stating had the General Assembly intended a provision to apply a certain way, it could have written the statute in that manner). Accordingly, the trial court was correct that McMillan lacked authority to arrest Dallman outside his jurisdiction as McMillan had neither common law nor statutory authority to affect an extraterritorial warrantless arrest of Dallman for the remainder of the offenses.

**The Appropriate Remedy for the Warrantless Arrest**

{¶ 24} The trial court determined that suppression of the evidence was the appropriate remedy. In so holding, the trial court compared the Ohio Supreme Court's decisions in *State v. Jones,* 88 Ohio St.3d 430 (2000) and *State v. Brown,* 143 Ohio St.3d 444, 2015-Ohio-2438 (*Brown II*). The trial court noted *Brown II* was determined after *Jones,* and even though there were distinguishable facts in the case at bar from *Brown II,* the trial court believed "that suppression of the evidence is the appropriate remedy in this case when Officer McMillan made an arrest outside his jurisdiction contrary to the requirements set forth" in R.C. 2935.03.

{¶ 25} The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." Section 14, Article I of the Ohio Constitution contains nearly identical language; however, the Ohio Supreme Court has determined that the Ohio Constitution has force independent of the United States Constitution and provides greater protection than the Fourth Amendment. *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 21 (*Brown I*) (suppressing evidence based on contemporaneous violations of R.C. 2935.26 and the Ohio Constitution where a police officer affected a warrantless arrest for a minor misdemeanor

offense).

{¶ 26} An automobile stop by a police vehicle based on probable cause that a traffic violation occurred is reasonable under the United States and Ohio Constitutions. *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. The United States Supreme Court has held that suppression of evidence obtained as a result of a Fourth Amendment violation is an essential part of the constitutional protections provided therein. *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684 (1961). This is known as the exclusionary rule. *Id.* The Ohio Supreme Court has consistently held that a purely statutory violation does not trigger application of the exclusionary rule. *Jones* at 435-36. Rather, a statutory violation warrants application of the exclusionary rule only when the violation contemporaneously violates the United States or Ohio Constitutions. *Id.*; *see also Brown I* at ¶ 16.

{¶ 27} The United States Supreme Court has held that a warrantless minor misdemeanor arrest based upon probable cause does not run afoul to the Fourth Amendment to the United States Constitution. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536 (2001). The Ohio Supreme Court applies a balancing test to determine whether an unauthorized warrantless arrest constitutes a violation of the Ohio Constitution. *Jones* at 438, *overruled in part by Brown I* at ¶ 22 (finding *Jones* "is still authoritative as to the Ohio Constitution").

> [T]he balancing test requires that we weigh the competing interests surrounding the governmental action at issue. That is, we must evaluate on the one hand the degree to which the governmental action intrudes upon a person's liberty and privacy, and, on the other hand, the degree to which the intrusion is necessary for the promotion of legitimate governmental interests.

*Jones* at 438.

{¶ 28} In *Brown II*, the Ohio Supreme Court applied the *Jones* balancing test where

- 10 -

a township police officer initiated an extraterritorial traffic stop for a minor misdemeanor traffic offense. The township officer observed the minor misdemeanor offense outside of his jurisdiction and it was undisputed that the officer lacked authority to initiate the traffic stop on the interstate highway. *Id.* at ¶ 4. During the stop, the township officer discovered facts sufficient to constitute probable cause for felony drug offenses and affected a warrantless arrest. The court found

> [t]he government's interests in permitting an officer without statutory jurisdiction or authority to make a traffic stop for a minor misdemeanor offense in these circumstances is minimal and is outweighed by the intrusion upon the individual's liberty and privacy that necessarily arises out of the stop.

*Id.*

{¶ 29} Likewise, the Sixth District analyzed the initiation of an extraterritorial traffic stop for suspicion of an OVI offense where an Ohio Department of Natural Resources park officer observed a motorist drive outside his lane multiple times. *State/Maumee v. Curran*, 6th Dist. Lucas No. L-16-1172, 2017-Ohio-7008, ¶ 4. The park officer became concerned the motorist may strike another vehicle and initiated the traffic stop. *Id.* The park officer's observations and the traffic stop both occurred outside the officer's statutory jurisdiction. *Id.* at ¶ 17. Therefore, the park officer acted outside his statutory authority. *Id.* at ¶ 11. Nonetheless, the court applied the *Jones* balancing test and upheld the traffic stop under the Ohio Constitution. *Id.* at ¶ 17-18. The court found the test weighed in favor of the state because there was an immediate safety justification for the stop due to the obvious danger presented by a motorist operating a vehicle while impaired. *Id.* at ¶ 18. Thus, the momentary invasion of the motorist's liberty and privacy interests was minimal compared to the risk his impaired driving posed to the public. *Id.*

{¶ 30} Applying *Jones*, *Brown I,* and *Brown II* to this case requires a consideration of whether McMillan acted within his statutory authority and had probable cause to stop,

- 11 -

detain, and eventually arrest Dallman for OVI. McMillan's observation that Dallman was operating his motor vehicle without a rear license plate provided probable cause that Dallman was violating R.C. 4503.21. As discussed above, R.C. 2935.03(E)(3) provided McMillan authority to initiate the traffic stop for the failure to display a rear license plate offense. Thus, the initial traffic stop comported with the Fourth Amendment and Section 14, Article I of the Ohio Constitution. During the course of the traffic stop, McMillan developed probable cause that Dallman was operating a vehicle under the influence of alcohol. As McMillan acted upon probable cause, pursuant to *Atwater*, Dallman's arrest for OVI did not offend the Fourth Amendment. However, R.C. 2935.03 provides no statutory authority for a police officer to arrest a person first observed committing an OVI offense outside of the officer's jurisdiction. Because McMillan did not have statutory authority to arrest Dallman for OVI under these circumstances, application of the *Jones* balancing test is necessary to determine whether Dallman's OVI arrest violated Section 14, Article I of the Ohio Constitution.

{¶ 31} Consistent with *Curran*, we find the *Jones* balancing test weighs in favor of the state. OVI is a serious misdemeanor offense, which presents an immediate danger to the health, safety, and welfare of the public, as opposed to the minor misdemeanor offenses involved in *Jones*, *Brown I*, and *Brown II*. As in *Curran*, the additional intrusion upon Dallman's liberty and privacy interests was minimal compared to the legitimate governmental interest in eliminating the threat Dallman's impaired driving presented to the health, safety, and welfare of the public.

{¶ 32} Unlike *Curran*, McMillan did not attempt to contact local police before arresting Dallman. Nonetheless, Dallman's arrest was reasonable under the Ohio Constitution, considering the serious threat posed to the public by his impaired driving. Therefore, the OVI arrest did not violate Section 14, Article I of the Ohio Constitution,

pursuant to the *Jones* balancing test. Although Dallman's OVI arrest violated the authority granted by R.C. 2935.03, this violation was purely statutory and does not invoke the exclusionary rule.

{¶ 33} Accordingly, the state's assignments of error are sustained, the trial court's grant of the motion to suppress is reversed, and this cause is remanded for further proceedings.

M. POWELL, J., concurs.

RINGLAND, J., concurs separately.

**RINGLAND, J., concurring separately.**

{¶ 34} I agree with the resolution of the assignments of error. However, I write separately to address the apparent shortcoming of the controlling statutes.

{¶ 35} As correctly stated in the majority opinion, R.C. 2935.03(E)(3) and 2935.26(A) conflict with one another. The phrase "until a warrant can be obtained" contained in R.C. 2935.03 does not make sense in this case because, per R.C. 2935.26, an arrest cannot be made for a minor misdemeanor offense. An arrest warrant cannot authorize an improper arrest.

{¶ 36} This issue has been ignored or deemed irrelevant in several prior instances. *See State v. Sweeten*, 1st Dist. Hamilton No. C-150583, 2016-Ohio-5828; *State v. Black*, 6th Dist. Fulton No. F-03-010, 2004-Ohio-218; *State v. Boerner*, 5th Dist. Stark No. 98CA00099, 1998 Ohio App. LEXIS 4714 (Aug. 31, 1998); *State v. Shuttleworth*, 5th Dist. Fairfield No. 99CA25, 1999 Ohio App. LEXIS 4745 (Sept. 29, 1999); *Cincinnati v. Alexander*, 54 Ohio St.2d 248 (1978). In the present case, I concur in judgment because Crim.R. 4(A)(3) supersedes the conflict in the statutes. *State ex rel. Boylen v. Harmon*, 107

Ohio St.3d 370, 2006-Ohio-7, ¶ 8 ("[w]here a conflict arises between a rule and a statute, the rule will control the statute on matters of procedure").

{¶ 37} Nevertheless, I find the shortcoming in the statutes to be unfortunate and unhelpful in the administration of justice. I write separately because I believe the conflict in the statutes was unintentional and therefore urge the Ohio Legislature to amend the relevant statutes.