[Cite as *State v. Turner*, 2019-Ohio-3950.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2018-11-082 |
| | : | O P I N I O N |
| - vs - | | 9/30/2019 |
| | : | |
| RYAN TURNER, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2018 TRC 11581

D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellant

Faris & Faris, LLC, Zachary F. Faris, 40 South Third Street, Batavia, Ohio 45103, for appellee

**HENDRICKSON, P.J.**

{¶ 1} Appellant, the state of Ohio, appeals from a decision of the Clermont County Municipal Court granting a motion to suppress filed by appellee, Ryan Turner. For the reasons discussed below, we reverse the trial court's decision and remand this matter for further proceedings.

{¶ 2} On August 7, 2018, a complaint was filed charging Turner with operating a

vehicle while under the influence of alcohol in violation of both R.C. 4511.19(A)(1)(a) and (A)(1)(d) and with committing a marked lanes violation in violation of R.C. 4511.33. The charges arose after Ohio State Highway Patrol Trooper Jordan Haggerty observed Turner drive on the white fog line on the right side of Old State Route 74 in Union Township, Clermont County, Ohio on August 5, 2018. Turner later submitted to a breath-alcohol test that indicated he had a breath-alcohol-content of .158.

{¶ 3} Turner pled not guilty to the charges and filed a motion to suppress. Turner challenged the traffic stop, arguing Trooper Haggerty did not have probable cause or reasonable and articulable suspicion to initiate the stop. The trial court held a hearing on Turner's motion on October 31, 2018. Trooper Haggerty was the only witness who testified at the hearing, and his testimony was supplemented by a video recording of the traffic stop, which had been taken from his cruiser camera.

{¶ 4} Trooper Haggerty testified that shortly before midnight on August 5, 2018, while he was sitting at a red light at the intersection of Glen Este-Withamsville Road and State Route 32, he observed a blue sedan driven by Turner pull out of a private drive and onto Glen Este-Withamsville Road. Trooper Haggerty found the turn "odd" as it appeared that the sedan almost turned into the curb before overcorrecting and traveling within its lane. Trooper Haggerty followed the sedan as it turned right onto Old State Route 74. He observed the sedan drift to the right, with the sedan's two right tires touching the white fog line on the right side of the road. Trooper Haggerty briefly followed the sedan before activating his cruiser's lights and initiating a traffic stop for a marked lanes violation.

{¶ 5} On cross-examination, Trooper Haggerty clarified that the sedan's right tires did not cross the fog line but merely touched the line. Trooper Haggerty testified the sole basis for the traffic stop was the sedan's touching of the white fog line on one occasion. He had not observed Turner commit any other traffic violations.

{¶ 6} After considering Trooper Haggerty's testimony and reviewing the video recording of the traffic stop, the trial court issued a decision granting Turner's motion to suppress. The trial court found that Trooper Haggerty's stop was based solely on his observation of Turner's tires touching the white fog line once. The court noted it had reviewed the video and "could not completely see the one-time touch" of the fog line but it took Haggerty's word that Turner's tires had, in fact, touched the fog line. Nonetheless, the court found that a reasonably prudent officer in the same situation would not have believed probable cause existed for a violation of R.C. 4511.33(A)(1). In so holding, the trial court cited to *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, ¶ 21, in which the Third District Court of Appeals held that the "as nearly as is practicable" language set forth in the marked lanes violation statute "inherently contemplates *some* inevitable and incidental touching of the lane lines by a motorist's vehicle during routine and lawful driving, without the vehicle being considered to have left the lane of travel so as to constitute a marked lanes violation." (Emphasis sic.) The trial court was persuaded by the *Shaffer* court's holding, concluding that

> a reasonably prudent officer who is familiar with [R.C.] 4511.33(A)(1) would not believe that he had probable cause to stop the defendant's vehicle under these circumstances otherwise countless numbers of motorists would be stopped daily by officers for touching the line in their lane of travel for a second or less one time as they lawfully drove on any roadway. Based upon these circumstances, the defendant's motion to suppress is granted.

{¶ 7} The state now appeals the trial court's decision granting Turner's motion to suppress, raising the following assignment of error:

{¶ 8} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS, AS THE TROOPER HAD REASONABLE, ARTICULABLE SUSPICION TO BELIEVE APPELLEE HAD COMMITTED A MARKED LANES VIOLATION UNDER

SECTION 4511.33(A)(1).

{¶ 9} In its sole assignment of error, the state argues that the trial court erred by granting Turner's motion to suppress. The state contends the evidence introduced at the evidentiary hearing demonstrated Trooper Haggerty had reasonable and articulable suspicion to effectuate the traffic stop as he believed Turner had committed a marked lanes violation. Alternatively, the state contends that even if there was not sufficient reasonable and articulable suspicion for the stop, the stop was nonetheless lawful as "the officer made a reasonable mistake of law."

{¶ 10} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Leder*, 12th Dist. Clermont No.CA2018-10-072, 2019-Ohio-2866, ¶ 17. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* An appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dallman*, 12th Dist. Clermont Nos. CA2017-11-056 and CA2017-11-057, 2018-Ohio-2670, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 11} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. "Ohio recognizes two types of lawful traffic stops." *State v. Stover*, 12th Dist. Clinton No. CA2017-04-005, 2017-Ohio-9097, ¶ 8. The first involves a non-investigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation. *Id.*, citing *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908,

¶ 31. "The second type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based on specific or articulable facts that criminal behavior is imminent or has occurred." *Id.*, citing *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7. *See also Moore* at ¶ 33, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

{¶ 12} While the concept of "reasonable and articulable suspicion" has not been precisely defined, "[t]he reasonable-suspicion standard is less demanding than the probable-cause standard when used analyzing an arrest." *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 10, citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). *See also State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15 (12th Dist.) (describing the reasonable-suspicion standard as "something more than an undeveloped suspicion or hunch but less than probable cause"). The determination of whether an officer had reasonable and articulable suspicion to initiate an investigative stop "must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Hairston* at ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 13} Trooper Haggerty initiated a traffic stop for a marked lanes violation under R.C. 4511.33(A)(1), which provides, in relevant part, as follows:

> (A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶ 14} The Ohio Supreme Court examined this statute within the context of a traffic stop and determined that "[a] traffic stop is constitutionally valid when a law-enforcement

officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, syllabus. In *Mays*, a trooper observed the vehicle in front of him drift across the white fog line by approximately one tire width on two occasions; no other traffic violations were observed. *Id.* at ¶ 2. The trooper initiated a traffic stop and, upon approaching the driver, noticed that the driver had bloodshot, glassy eyes and smelled of an alcoholic beverage. *Id.* at ¶ 3. The driver was arrested and charged with OVI and a marked lanes violation. *Id.* The driver filed a motion to suppress, which was granted by the trial court. *Id.* at ¶ 4. The appellate court reversed the trial court's judgment, and the supreme court accepted review over the certified question of whether "a police officer who witnesses a motorist cross a right white edge line and without further evidence of erratic driving or that the crossing was done in an unsafe manner make a constitutional stop of the motorist?" *Id.* at ¶ 1, 6.

{¶ 15} In answering the certified question in the affirmative, the supreme court used the reasonable and articulable suspicion standard, stating that "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8. The court noted that "R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic" and found that "[w]hen an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33." *Id.* at ¶ 16.

{¶ 16} In examining the "as nearly as is practicable" language of the statue, the court noted that while R.C. 4511.33 "does provide for certain circumstances in which a driver can cross a lane line without violating the statute," the "question of whether a [driver] might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant [to the] analysis of

- 6 -

whether an officer has a reasonable and articulable suspicion to initiate a traffic stop." *Id.* at ¶ 17. "An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *Id.*

{¶ 17} Furthermore, "[t]he phrase 'as nearly as practicable' does not give the driver the option to remain within the lane markings; rather the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." *Id.* at ¶ 18. "'[T]he legislature did not intend the statute to give motorists the *option* of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness.'" (Emphasis sic.) *Id.* at ¶ 19, quoting *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, ¶ 43. Because the driver in *Mays* was observed drifting across the white fog line on two occasions, the Supreme Court concluded that the trooper had reasonable and articulable suspicion that the driver had violated R.C. 4511.33 and the motion to suppress should have been denied. *Id.* at ¶ 21.

{¶ 18} Since *Mays* was decided, a number of appellate districts have determined that traveling on a centerline or fog line is not a violation of R.C. 4511.33 and, therefore, does not create probable cause or reasonable and articulable suspicion for a traffic stop. *See, e.g., Shaffer*, 2013-Ohio-3581 at ¶ 27-28 (finding that appellant's "driving onto the white fog line one time for a matter of three seconds" was not, standing alone, "sufficient to establish the requisite reasonable and articulable suspicion to stop [appellant] for a violation of R.C. 4511.33[A][1]"); *State v. Marcum*, 5th Dist. Licking No. 12-CA-88, 2013-Ohio-2652, ¶ 17 (finding that the trooper "did not have reasonable, articulable suspicion to stop the [defendant] based on her action in driving on the white fog line"); *State v. Konneh*, 6th Dist. Wood No. WD-17-007, 2018-Ohio-1239, ¶ 24 (holding that "a driver does not violate R.C.

- 7 -

4511.33 by weaving within one's own lane or driving *on* the demarcating lines, but he does violate R.C. 4511.33 when he travels completely *across* the lane marking"); *State v. Grigoryan*, 8th Dist. Cuyahoga No. 93030, 2010-Ohio-2883, ¶ 25 (finding that a driver's drifting to the left and to the right and then driving on the left yellow edge line was "inconsequential movement within a lane" that did not give rise to probable cause or reasonable articulable suspicion to make an investigatory stop); *State v. Kneier*, 11th Dist. Portage No. 2015-P-0006, 2015-Ohio-3419, ¶ 15 (finding that unless a vehicle's tires have "been observed to actually cross over the marked line * * * a vehicle does not leave its lane of travel and, as a result, there is no marked lane violation supporting probable cause to stop"). *See also State v. Williams*, 1st Dist. Hamilton No. C-960958, 1997 Ohio App. LEXIS 3467, *4-5 (Aug. 1, 1997) (in a case that predated *Mays*, the First District found that there was not probable cause or reasonable articulable suspicion for a traffic stop where the defendant was "driving, in a straight course, with her right-side tires directly on, but not over, the white edge line of the highway"); *United States v. Warfield*, 727 Fed. Appx. 182, 186 (6th Cir.2018) (noting that "[m]erely touching a lane line is not a violation of Ohio's marked lane statute").[1]

**{¶ 19}** We are not persuaded by the aforementioned cases. Rather, relying on the guidance provided by the supreme court in *Mays* and the express language of R.C. 4511.33(A)(1), we find that an officer who observes a motorist driving on a marked lane line has reasonable and articulable suspicion that the driver has violated R.C. 4511.33 and may conduct a traffic stop. R.C. 4511.33(A)(1) specifically provides that a vehicle is to be "driven, as nearly as practicable, *entirely within* a single lane or line of traffic." (Emphasis added.)

---

1. In finding that "[m]erely touching a lane line is not a violation of Ohio's marked lane statute," the federal court relied on case law from the Sixth District Court of Appeals. *See United States v. Warfield*, 727 Fed. Appx. 182, 186 (6th Cir.2018), citing *State v. Baker*, 6th Dist. Wood No. WD-13-074, 2014-Ohio-2564, and *State v. Parker*, 6th Dist. Ottawa No. OT-12-034, 2013-Ohio-3470.

The statute does not define "entirely within" and thus this court looks to the plain and ordinary meaning of the words. "Entirely" means "wholly, fully, completely." *Webster's Third New International Dictionary* 758 (1993). "Within" means "on the inside or on the inner-side" or "inside the bounds of a place or region." *Id.* at 2627. Therefore, applying the ordinary and plain meaning of the phrase "entirely within," a motor vehicle is required to travel fully inside the marked lanes. Driving on a marked lane is not fully inside or "entirely within" a single lane of traffic. As such, an officer who observes a motorist driving on a marked lane line has reasonable and articulable suspicion that the driver has violated R.C. 4511.33 and may conduct a traffic stop. *See, e.g., Lebanon v. Evans*, 12th Dist. Warren No. CA2009-08-116, 2010-Ohio-4402 (finding that an officer had reasonable and articulable suspicion for a traffic stop where an officer observed the motorist's tires "hit the dotted lines" a couple of times).

{¶ 20} Finding that R.C. 4511.33 requires a vehicle to remain "entirely within" and not on a marked lane line serves the "[c]ommon sense" purpose of keeping travelers and pedestrians safe. *Mays*, 2008-Ohio-4539 at ¶ 19. By requiring vehicles to stay "entirely within" the marked lane line, other motorists traveling on the roadways, pedestrians walking on the side of a roadway, and disabled vehicles pulled over on the side of the roadway are protected. Conversely, under the interpretation of R.C. 4511.33 taken by the dissent and by the First, Third, Fifth, Sixth, Eighth and Eleventh Districts, collisions are bound to occur as their approach permits two motorists driving in the same direction in parallel lanes to lawfully drive on top of the lane markings at the same time and same place. Similarly, under their construction of the statute, it would also be permissible for a disabled vehicle pulled off the roadway to be on the white fog line that a motorist traveling by is also lawfully permitted to be traveling on. Interpreting R.C. 4511.33(A)(1) to allow two vehicles to lawfully occupy the

same space at the same time does not make sense.[2]   To keep motorists and pedestrians safe, all vehicles traveling on a roadway must stay entirely within, and not on, a marked lane line.[3]

**{¶ 21}** The fact that Trooper Haggerty only observed Turner's tires touch the white fog line on one occasion, as opposed to multiple touches of the line, is of no consequence.  A traffic stop is constitutionally valid when an officer observes a traffic violation under R.C. 4511.33 and further evidence of erratic or unsafe driving is unnecessary.  *See Mays* at the syllabus.  Furthermore, as the supreme court has noted, the language "as nearly as is practicable" that appears in R.C. 4511.33(A)(1) does not provide a motorist with the option of staying within lane markings; rather, a driver is to remain "entirely within" the lane markings unless the driver cannot reasonably avoid straying.  *Id.* at ¶ 18.  The fact that a motorist may have a possible defense to a charge of R.C. 4511.33 is irrelevant to the analysis of whether an officer had reasonable and articulable suspicion to initiate the traffic stop.  *Id.* at ¶ 17.  R.C. 4511.33 does not "'give motorists the *option* of staying in the lane at their choosing.'"  *Id.* at ¶ 19, quoting *Hodge*, 2002-Ohio-3053 at ¶ 43.

**{¶ 22}** Trooper Haggerty testified he observed the right two tires of Turner's vehicle touch the white fog line on the right side of the road.  Taking Trooper Haggerty at his word, as the trial court expressly stated it did in this case, there was evidence that Turner failed to

---

2. Contrary to the position taken by the dissent, the marked lanes statute does not distinguish between yellow lines, white lines, solid lines, or dashed lines.  Rather, the statute specifies that when "any roadway has been divided into two or more clearly marked lanes for traffic, * * * [a] vehicle * * * shall be driven, as nearly as practicable, *entirely within a single lane or line of traffic.*" (Emphasis added.) R.C. 4511.33(A)(1). Regardless of whether a motorist's tires drift onto a solid white fog line separating the berm from the roadway, drift onto solid or dashed white line separating lanes of traffic moving in the same direction, or drift onto a solid white line separating lanes at an intersection with a traffic control device, in each instance, the motorist is required to stay "entirely within" his lane of travel.

3. We note that case law has focused on whether or not a vehicle's tires have crossed a marked lane line. However, R.C. 4511.33(A)(1) requires "*a vehicle*" to be driven "entirely within a single lane or line of traffic." A vehicle includes its fenders and the side mirrors – all items that are likely over a marked lane line if a vehicle's tires are traveling on the marked line.

operate his vehicle "entirely within a single lane or line of traffic." As such, we find that there was reasonable and articulable suspicion for the traffic stop. We therefore find it unnecessary to address the state's "mistake of law" argument. The state's sole assignment of error is sustained. The trial court's decision granting Turner's motion to suppress is reversed and this matter is remanded for further proceedings.

{¶ 23} Judgment reversed and remanded.

S. POWELL, J., concurs.

M. POWELL, J., dissents.

**M. POWELL, J., dissenting.**

{¶ 24} In finding that a mere touching of the fog line provides a reasonable, articulable suspicion that R.C. 4511.33(A) has been violated, the majority accepts as a given that the "lane of travel" begins to the immediate left of the fog line. The majority does not identify the source of this critical premise upon which its analysis proceeds. Because I believe that the majority's basic premise is faulty, I dissent.

{¶ 25} The Ohio Revised Code neither defines the term "lane" nor does it set forth the function of road line markings. However, road markings are considered traffic control devices. R.C. 4511.01(QQ) defines "traffic control device" as including a "marking * * * placed on * * * a street, highway, private road open to public travel."

{¶ 26} Regarding "traffic control devices," the General Assembly has directed that "[t]he department of transportation shall adopt a manual for a uniform system of traffic control devices * * * for use upon any street, highway, bikeway, or private road open to public travel within this state. Such uniform system shall correlate with, and so far as possible conform to, the system approved by the federal highway administration." R.C. 4511.09. The Ohio

Department of Transportation has complied with the mandate of R.C. 4511.09 to "adopt a manual for a uniform system of traffic control devices" by promulgating the Ohio Manual of Uniform Traffic Control Devices (MUTCD).

{¶ 27} Pursuant to R.C. 4511.10 and 4511.11, the General Assembly has further directed that state and local authorities "place and maintain traffic control devices" in accordance with the manual for a uniform system of traffic control devices "to carry out [R.C.] 4511.01 to 4511.78 and 4511.99 * * * or to regulate, warn, or guide traffic." Finally, R.C. 4511.12 provides that "[n]o * * * driver of a vehicle * * * shall disobey the instructions of any traffic control device placed in accordance with this chapter."

{¶ 28} This case involves the solid white line which runs along the right-hand side of the roadway and which is commonly referred to as the "fog line." Part 3 of the MUTCD pertains to road markings. Regarding white line road markings, Sections 3A.05 A and 3A.05 B of the MUTCD provide that "white markings for longitudinal lines shall delineate * * * [t]he separation of traffic flows in the same direction, or [t]he right-hand edge of the roadway." Regarding solid line road markings, Section 3A.06 B provides that "[a] solid line discourages or prohibits crossing (depending on the specific application)." Thus, white road markings delineate lanes of travel for traffic proceeding in a single direction. The fog line, as a solid white line, delineates the right-hand edge of the right-hand lane of travel. Because the MUTCD limits its instruction to crossing a solid white line, as opposed to touching or driving upon the line, the lane boundary created by the fog line begins to its immediate right. In other words, the entire fog line is within the lane of travel. Thus, it is only when one drives to the right of the fog line that one has failed to drive in marked lanes in violation of R.C. 4511.33(A).

{¶ 29} Although Turner was ultimately charged with OVI, this case did not involve a traffic stop made upon a reasonable, articulable suspicion that Turner was driving under the

influence of drugs or alcohol. At the motion to suppress hearing, Trooper Haggerty did not testify that he suspected that Turner was OVI based upon his observation of Turner's operation of his vehicle and that he stopped Turner to confirm or dispel that suspicion. The sole basis upon which Trooper Haggerty stopped Turner was for a violation of R.C. 4511.33(A) based upon his observation that Turner touched the fog line on a single occasion. Trooper Haggerty's observation that Turner touched the fog line did not require that Turner be stopped to further investigate whether Turner had failed to drive within marked lanes. Nor was there probable cause to stop Turner for violating R.C. 4511.33(A) because touching the fog line is not a failure to drive within marked lanes as discussed above.

{¶ 30} By virtue of R.C. 4511.10, 4511.11, and 4511.12 requiring that state and local authorities place and maintain traffic control devices in accordance with the MUTCD and that drivers obey traffic control devices, and by not otherwise addressing the function of road line markings in the Ohio Revised Code, the General Assembly has effectively incorporated the MUTCD into R.C. Chapter 4511. Section 3A.06 B of the MUTCD objectively and unambiguously provides that a solid white line marking "discourages or prohibits crossing." It is reasonable to expect that a state highway patrolman charged with the daily responsibility of enforcing the traffic laws would know the function of roadway line markings and that a mere touching of the fog line does not violate the MUTCD's instruction for such a line. Furthermore, as the cases cited by the majority from numerous appellate districts indicate, not a single appellate district considering the issue has found that driving upon or touching the fog line gives rise to a reasonable, articulable suspicion or probable cause that R.C. 4511.33(A) has been violated.[4]

---

4. In addition to the cases cited by the majority, the Third Appellate District affirmed the granting of a motion to suppress and the Eleventh Appellate District reversed the denial of a motion to suppress upon respectively finding that driving on or touching the fog line did not constitute cause that R.C. 4511.33(A) had been violated. *See State v. Smith*, 3d Dist. Marion No. 9-17-05-05, 2017-Ohio-5845, ¶ 18-25; *State v. Lisac*, 11th Dist. Geauga No. 2012-G-3056, 2012-Ohio-5224, ¶ 19-20.

{¶ 31} The majority rejects the weight of authority on this issue and the plain and unambiguous function of the fog line established by the MUTCD, and criticizes the view expressed in this dissent because of their safety concerns for "other motorists travelling on the roadways, pedestrians walking on the side or the roadway, and disabled vehicles pulled over on the side of the roadway." However, all the majority's safety concerns are addressed in other statutes.

{¶ 32} The majority suggests that interpreting R.C. 4511.33(A) to permit a driver to drive upon or touch the fog line would result in a hazard to motorists travelling in the same direction on a multi-lane roadway, as each would have the right to drive upon the broken white line defining the lanes of travel. However, the broken white line separating lanes of travel in the same direction has a different function than the fog line. As opposed to discouraging or prohibiting crossing a solid line like the fog line, Section 3A.06 C of the MUTCD provides that a broken white line indicates a "permissive condition." What that "permissive condition" may be is beyond the scope of the issue presented in this case. Suffice it to say however, the function of the fog line, as unambiguously relating to crossing the line, is different than that for a broken white line. Furthermore, as the fog line defines the right-hand edge of the roadway, there should be no traffic legally operating to the right of the fog line and if there is, such traffic must yield the right-of-way to traffic operating on the roadway. R.C. 4511.44(A).

{¶ 33} Neither are pedestrians nor disabled vehicles endangered by an interpretation of R.C. 4511.33(A) permitting a driver to touch or drive upon the fog line. Pedestrians are required to remain on sidewalks, the shoulder of the road as far from the edge of the roadway as practical, or as near as practical to an outside edge of the roadway, depending upon conditions. R.C. 4511.50(A)-(C). In the event a pedestrian must walk on the roadway, the pedestrian is required to yield the right-of-way to traffic on the roadway. R.C. 4511.50(D).

{¶ 34} Regarding disabled vehicles, unless it is impossible to avoid stopping and parking on the travelled portion of the highway,

> [N]o person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.

R.C. 4511.66(A).

{¶ 35} Thus, the General Assembly has clearly placed the responsibility to minimize the hazard presented by pedestrians and disabled vehicles upon the pedestrians and the operators of disabled vehicles.

{¶ 36} Not only do I agree with the First, Third, Fifth, Sixth, Eighth, and Eleventh Appellate Districts that touching or driving upon the fog line does not give rise to a reasonable, articulable suspicion or probable cause of criminal activity, but I also believe that the MUTCD, as incorporated into R.C. Chapter 4511, defines a lane of travel as including the fog line such that a mere touching or driving upon the fog line does not violate R.C. 4511.33(A). I would therefore affirm the trial court's granting of the motion to suppress.[5]

{¶ 37} With regard and respect for my colleagues in the majority, I dissent.

---

5. The state alternatively argues for the first time on appeal that Trooper Haggerty was constitutionally justified in stopping Turner based upon a good faith mistake of law. The majority did not address this issue in view of its reversal upon the state's primary argument. Other than observing that the state has forfeited this argument by failing to raise it before the trial court, the issue will not be addressed further by this dissent.