[Cite as *State v. Smith*, 2017-Ohio-5845.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,               CASE NO. 9-17-05

    v.

LESLEE SMITH,                           O P I N I O N

    DEFENDANT-APPELLEE.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 16-CR-0641

**Judgment Affirmed**

Date of Decision: July 17, 2017

---

APPEARANCES:

    *Kevin P. Collins* **for Appellant**

    *Sheena Bateman-Carothers* **for Appellee**

**SHAW, J.**

{¶1} The State of Ohio brings this appeal from the February 23, 2017, judgment of the Marion County Common Pleas Court granting the suppression motion of defendant-appellee, Leslee Smith ("Smith"). On appeal, the State argues that the trial court erred in finding that the officer who performed a traffic stop of Smith lacked a reasonable articulable suspicion that a marked lanes violation had been committed to stop Smith's vehicle. For the reasons that follow we affirm the judgment of the trial court.

*Facts and Procedural History*

{¶2} On June 11, 2016, Smith's vehicle was stopped by Sergeant Mark Menendez of the Ohio State Highway Patrol for failing to drive within the marked lanes in violation of R.C. 4511.33. As a result of the traffic stop, drugs were located in Smith's vehicle. Subsequently Smith was indicted for one count of Possession of Cocaine in violation of R.C. 2925.11(A)/(C)(4), a felony of the fifth degree, and one count of Possession of Heroin in violation of R.C. 2925.11(A)/(C)(6), a felony of the fifth degree. Smith pled not guilty to the charges.

{¶3} On January 20, 2017, Smith filed a motion to suppress arguing that video from Sergeant Menendez's dash camera showed that Sergeant Menendez had no lawful cause to stop Smith's vehicle. Smith contended that the video merely

showed that her vehicle's tires touched the white edge line one time but she never drove outside of the marked lanes.

{¶4} On February 17, 2017, the trial court held a hearing on the suppression motion. At the hearing, the State presented the testimony of Sergeant Menendez and entered the dash camera video of Sergeant Menendez's cruiser into evidence. The video was viewed multiple times at the hearing. Sergeant Menendez testified that he saw things that were not present on the video as he had a slightly different vantage point.

{¶5} The trial court conducted an analysis of the issues and in its judgment entry on the matter, the trial court held as follows.

> **An evaluation as to whether Sgt. Menendez had reasonable suspicion to stop the Defendant's vehicle depends on the factual conclusions reached by this Court. In the instant case, even though only one witness testified and only one exhibit was introduced, the evidence before the Court is in conflict. The conflict is between the testimony of Sgt. Menendez and what is clearly depicted on the video. The Court finds that, in this case, the video is a** [sic] **more probative of the facts, as it is not subject to fallibility of human perception or memory.**
>
> * * * [The trial court then summarized the testimony of Sergeant Menendez and what was depicted on the video.] * * *
>
> **[Based on the evidence presented,] [t]he Court makes the following factual findings:**
>
> 1. **The Defendant's vehicle stayed within its lane of travel at all times while on Vernon Heights Blvd. At 1:44:54, the right tires of the Defendant's vehicle drove on top off** [sic] **the white line separating the parking area from the lane of travel**

**for approximately one second, but never crossed the line. This is apparent because the white line can be seen on the video both behind and in front of the tires, but is not visible where the tires are on top of the white line.**

**2.  When the Defendant's vehicle entered Vernon Heights Blvd. at 1:43:39, Sgt. Menendez was not in a position where he could observe whether or not the vehicle was in its lane of travel, as he was too far away, and was perpendicular to the vehicle on the driver's side. The Defendant's vehicle appears to be operating within its lane of travel at that point as well.**

**3.  At no time did the Defendant's operation of the vehicle pose any risk of safety to the public. There was not a single parked car in the parking lane anywhere on Vernon Heights Blvd. when the Defendant was driving on that street. Additionally, no pedestrians or other moving vehicles were on the street. Moreover, the Defendant was driving within the speed limit. Any slight weaving appeared to be consistent with normal operation. At all times, the Defendant's vehicle was being operated in a safe manner.**

**\* \* \***

**For these reasons, the Court finds that Sgt. Menedez** [sic] **did not have a reasonable, articulable suspicion to believe that the Defendant committed a traffic violation or any other criminal offense.**

(Doc. No. 37).  The trial court thus found the traffic stop of Smith's vehicle invalid and suppressed the evidence obtained as a result.

**{¶6}** It is from this judgment that the State appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court erred in granting defendant-appellee's motion to suppress evidence.**

{¶7} In its sole assignment of error, the State argues that the trial court erred by granting Smith's suppression motion. Specifically, the State argues that Sergeant Menendez specifically testified that Smith drifted outside of her lane twice, that Sergeant Menendez testified that he had a slightly different vantage point from the dash camera, and that in the video Smith's tire clearly drove onto the white line. The State argues that under this Court's decisions in *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, and *State v. Anthony*, 3d Dist. Seneca No. 13-9-26, 2009-Ohio-6717, and pursuant to the Supreme Court of Ohio's decision in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, the trial court's factual and legal conclusions leading to suppression in this matter were erroneous.

*Standard of Review*

{¶8} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson,* 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71,

2006–Ohio–3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

*Relevant Authority*

{¶9} The primary issue before this Court in this case is whether Sergeant Menendez had a reasonable articulable suspicion to believe Smith committed a marked lanes violation pursuant to R.C. 4511.33. The Supreme Court of Ohio has defined "reasonable articulable suspicion" as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement]." *State v. Bobo,* 37 Ohio St.3d 177, 178 (1988), quoting *Terry v. Ohio,* 392 U.S. 1, 21–22 (1968). "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves." (Emphasis sic.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 12, quoting *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 11. "A traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving. *Mays* at syllabus.

{¶10} In this case Sergeant Menendez testified that he stopped Smith's vehicle for a violation of R.C. 4511.33, which reads as follows.

> **(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal**

**corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:**

**(1)   A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.**

*Evidence Presented*

**{¶11}** At the Suppression hearing Sergeant Menendez testified that while he was on patrol at approximately 1:43 a.m. on June 11, 2016, he was turning left onto a tree-lined boulevard that Smith's vehicle was merging onto from the opposite direction.  Sergeant Menendez testified that during Smith's turn, he observed her drive over the white line on her right side.  Sergeant Menendez testified that he thought she may have even hit the curb because it looked like her car "jumped" or "bounced."

**{¶12}** Sergeant Menendez testified that he followed Smith's vehicle and that he observed it weaving while driving through the boulevard's curves, though the weaving was done entirely within the marked lane lines.  Sergeant Menendez admitted that the weaving did not appear to be visible on the dash camera video.  Sergeant Menendez also testified that Smith's vehicle was traveling under the speed limit, going approximately 28 mph in a 35 mph zone.

**{¶13}** After following the vehicle for approximately a minute, Sergeant Menendez testified that he observed the vehicle travel outside of the marked lanes

for a second time. Sergeant Menendez testified that he then initiated a traffic stop for driving outside the marked lanes.

{¶14} The State entered dash camera footage of Sergeant Menendez's cruiser into evidence. Due to Sergeant Menendez being perpendicular to Smith's vehicle, the first instance where Sergeant Menendez testified he observed Smith's vehicle driving over the white line is not visible. As the trial court noted, there is also no indication of Smith's car hitting the curb or "jumping/bouncing." To be clear, Smith's vehicle is visible as it turns onto Vernon Heights Boulevard, but nothing on the video shows the car either crossing the edge line or "bouncing."

{¶15} After the first purported incident, Sergeant Menendez followed Smith and while he testified that Smith was weaving within her lane, the video only shows perhaps the slightest shift of Smith's vehicle entirely within her lane of travel. The trial court determined this to be consistent with normal travel, particularly when considering Smith was driving on a relatively curvy boulevard.

{¶16} As to the second instance wherein Sergeant Menendez testified that Smith drove over the white edge line, the video shows that Smith did, in fact, drive onto the white edge line just after a truck passed in the opposite direction with its lights appearing fairly bright in the dash camera video. The video does not clearly show Smith driving over the white line, but it does show Smith's vehicle driving onto the line.

{¶17} When the discrepancies between the video and Sergeant Menendez's testimony were pointed out to Sergeant Menendez by defense counsel and by the trial court, Sergeant Menendez testified that he had a slightly different vantage point than his dash camera, and that he could see better with his naked eye. Sergeant Menendez also testified that there was little-to-no traffic out, that there were no parked cars on the street, that conditions were clear, and there were no obstructions on the roadway. On examination by the court regarding the video, Sergeant Menendez testified that he "guess[ed]" Smith's vehicle was on top of the line and not over the line.

*Argument and Analysis*

{¶18} Based on the evidence presented, the trial court found that the dash camera footage conflicted with Sergeant Menendez's testimony and that the dash camera footage essentially rendered Sergeant Menendez's testimony not to be as persuasive to the trial court as the video.[1] The trial court found no evidence of weaving, no evidence of any driving outside of the marked lanes in the first instance (or even onto the white line), and the trial court found that in the second instance, Smith's tires were merely on top of the white edge line, not across it as Sergeant Menendez testified. Thus the trial court found no traffic violation warranting a stop by Sergeant Menendez.

---

[1] Although the trial court did not explicitly say it found Sergeant Menendez not to be credible, it is implicit in the factual findings.

{¶19} On appeal, the State argues that the trial court's factual and legal conclusions were erroneous. Regarding the factual conclusions, the State argues Sergeant Menendez's testimony established a marked lanes violation, and the dash camera footage did not contradict his account. However, the trial court found the dash camera footage was more probative and thus to be given greater weight than Sergeant Menendez's testimony, and the dash camera footage does support the findings made by the trial court.

{¶20} As to the trial court's legal conclusions, the State argues that the trial court operated on an incorrect assumption. Specifically, the State contends that driving onto the white line does not consist of driving entirely within the lane, and that the trial court thus erred for operating under the assumption that driving onto the white line does not constitute a marked lanes violation. In support of its argument, the State cites a number of cases including this Court's decision in *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581.

{¶21} In *Shaffer*, we addressed whether an officer had reasonable articulable suspicion of criminal activity to stop a vehicle for a marked lanes violation where a vehicle's tires were on the white line but parts of the vehicle, such as the fender and mirror, were across the line. We found that the testimony in *Shaffer* did not support a reasonable articulable suspicion to justify a traffic stop for a marked lanes violation. In making that finding, we reasoned as follows.

**In drafting the foregoing subsection** [R.C. 4511.33]**(A)(1), the legislature specifically chose the phase "as nearly as is practicable" in describing a motorist's duty to drive within a single lane or line of traffic. We believe the language "as nearly as is practicable" inherently contemplates** *some* **inevitable and incidental touching of the lane lines by a motorist's vehicle during routine and lawful driving, without the vehicle being considered to have left the lane of travel so as to constitute a marked lanes violation as proscribed by R.C. 4511.33(A)(1), such as to avoid debris, obstructions or imperfections in the roadway.**

**In the alternative, the same subsection notably does not proscribe all movement from the marked lane but expressly links any movement from the marked lane directly with the element of safety—specifically permitting movement from the lane only where "the driver has first ascertained that such movement can be made with safety."**

**Accordingly it is our conclusion that consideration of the statutory factors of** *practicability* **and** *safety* **is integral to any determination of a violation of R.C. 4511.33(A)(1).**

**We would be inclined to agree that a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) could be established by almost any evidence in the record addressing** *either* **the practicability** *or* **the safety of the driving circumstances. This conclusion stems in part from the fact that a sudden deviation from the lane of travel, where there is nothing in the surrounding circumstances to indicate why it was not practicable for the driver to remain within the lane, could in itself raise a legitimate safety concern sufficient to constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) in the right case.**

**At the same time, we also recognize that there could always exist something in the surrounding conditions or circumstances that raises a safety concern regarding the driver's deviation from the lane that completely obviates any need to address the issue of the driver's practicability in maintaining the lane of travel, all of which could likewise independently constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1).**

> **However, the fact remains that in this case there is *no* evidence in the record from which any legitimate inference can be drawn regarding either one of these requisite statutory elements.  As noted earlier, the only evidence presented to the trial court was Trooper Sisco's testimony that there was a *one-time touching* of Shaffer's tires on the white fog line, causing a slight extension of the right fender and mirror of the vehicle over the line *for approximately three seconds.*  There was no other evidence concerning the circumstances surrounding Shaffer's failure to maintain her lane of travel.**
>
> **More specifically, there was nothing in Trooper Sisco's testimony as to the traffic, weather or road conditions, or anything else in the record to indicate *either* 1) that there was no apparent reason why it was not practicable for Shaffer to remain within the lane, *or* 2) that in this instance, Shaffer's single and brief movement from the lane otherwise presented any apparent issue of safety.  Accordingly, without some additional evidence in the record regarding the surrounding circumstances, traffic and road conditions going to the express statutory language regarding either *practicability* or *safety,* we cannot conclude that the act of Shaffer driving onto the white fog line one time for a matter of three seconds is alone sufficient to establish the requisite reasonable and articulable suspicion to stop Shaffer for a violation of R.C. 4511.33(A)(1).**

*Shaffer* at ¶¶ 21-27.

{¶22} Although *Shaffer* reached the opposite conclusion of what the State advocates in this case, the State argues that the evidence that was precisely lacking in *Shaffer* is present here.  The State contends that it did put forth evidence that there was no apparent reason for Smith to travel outside of her lane of travel and that Smith's movement onto the white edge line was not for safety purposes.  However, in this case it is clear that the trial court did not find the State's testimony to be as

-12-

credible as the video evidence.[2]  Under such circumstances, the State's insistence that *Shaffer* would compel a different result here is misplaced.[3]

**{¶23}** As additional support, the State cites this Court's decision in *State v. Anthony*, 3d Dist. Seneca No. 13-9-26, 2009-Ohio-6717, wherein this Court affirmed a trial court's determination that a stop was valid where a vehicle crossed the white line by two tire-widths.  *Anthony* is easily distinguishable from the case before us for multiple reasons.  First, the vehicle in *Anthony* traveled outside its lane by two tire-widths, a fact that is not present here.  While we do not expressly adopt a "tire rule," that fact is clearly distinguishable.  Second, in *Anthony* we merely upheld the trial court's *discretion* in determining facts and then found that controlling law did not compel a different result.  Thus *Anthony* is unpersuasive in these circumstances where we are upholding a trial court's *discretion* to determine the facts so long as they are supported by competent and credible evidence.

---

[2] In *Shaffer* we also expressly declined to adopt the "tire rule" as espoused by other Ohio Appellate Districts, wherein there is no marked lanes violation without crossing over the white line.  *See Wickliffe v. Petway*, 11th Dist. Nos. 2011-L-101, 2011-L-102, 2012-Ohio-2439.  We chose to determine these issues on a case by case basis.  However, the State does mostly ignore our finding in ¶ 21 of *Shaffer* that it seems inherent in the legislature's word choice that the legislature contemplated "*some* inevitable and incidental touching of the lane lines." (Emphasis sic.)

[3] At the trial court level, the State insinuated that our decision in *Shaffer* was inconsistent with the Supreme Court of Ohio's decision in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539.  The trial court disagreed and we would emphasize that in *Mays*, the driver drifted entirely outside his lane of travel multiple times and the Supreme Court of Ohio found in those circumstances a stop was valid.  While Sergeant Menendez claimed that Smith went outside of her lane multiple times, the trial court found this not to be credible in light of the video and the video does not dispute the trial court's finding on the matter.  Moreover, *Mays* does not deal with a situation where a vehicle was merely on an edge line.  Furthermore, at least one Ohio Appellate Court has agreed with our interpretation in *Shaffer*.  *See State v. Kneier*, 11th Dist. Portage No. 2015-Ohio-P-0006, 2015-Ohio-3419 (upholding trial court's determination that officer lacked reasonable articulable suspicion to stop vehicle where, *inter alia*, the DVD of stop disputed officer's testimony that tire passed over the line).

**{¶24}** Finally, the State argues that a police officer's testimony alone is sufficient to establish a reasonable articulable suspicion for a traffic stop, citing *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, in support. *Harrison* at ¶ 24, quoting *State v. McClellan*, 3d Dist. Allen No. 1-09-21, 2010-Ohio-314, ¶ 38 (" 'A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop.' "). We do not dispute the statement that a police officer's testimony *can* be sufficient to establish reasonable articulable suspicion for a stop; however, the State fails to acknowledge that the trial court apparently did not find the police officer's testimony credible in light of the footage from his dash camera. Our repeated viewing of the dash camera video supports the trial court's factual findings regarding the video. Although Sergeant Menendez's testimony went further than what can be viewed on the dash camera, the trial court found that the camera footage can be viewed more credible and relied upon it.

**{¶25}** Under the specific facts and circumstances of this case, we cannot find that the trial court erred in finding that Sergeant Menendez lacked a reasonable articulable suspicion to conduct a traffic stop of Smith's vehicle. Therefore, the State's sole assignment of error is overruled.

*Conclusion*

**{¶26}** For the foregoing reasons, the State's assignment of error is overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**