[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Turner*, Slip Opinion No. 2020-Ohio-6773.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6773

THE STATE OF OHIO, APPELLEE, *v*. TURNER, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Turner*, Slip Opinion No. 2020-Ohio-6773.]**

*Traffic law—Marked-lanes violation—Statutory scheme merely discourages or prohibits a vehicle from crossing the fog line, not touching it—Judgment reversed.*

(No. 2019-1674—Submitted August 18, 2020—Decided December 22, 2020.)

CERTIFIED by the Court of Appeals for Clermont County, No. CA2018-11-082, 2019-Ohio-3950.

_____

KENNEDY, J.

{¶ 1} This case was accepted as a certified conflict between judgments of the Twelfth District and First, Third, Fifth, Sixth, Eighth, and Eleventh District Courts of Appeals. The Twelfth District certified the issue in conflict as follows:

Does an officer have reasonable and articulable suspicion to conduct a traffic stop of a motor vehicle for a marked lanes violation under R.C. 4511.33(A)(1) when the officer observes the tires of a vehicle driving on, but not across a marked lane line?

157 Ohio St.3d 1544, 2020-Ohio-94, 137 N.E.3d 1225.

{¶ 2} We conclude upon review of the certified question that when an officer believes a traffic law has been violated, the focus of the inquiry is whether the officer had "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus. We therefore consider the certified question within that context and answer it in the negative.

{¶ 3} We hold, based on the plain language of R.C. 4511.33(A)(1), the definitions set forth in R.C. 4511.01, and the statutory scheme as a whole, that the single solid white longitudinal line on the right-hand edge of a roadway—the fog line—merely "discourages or prohibits" a driver from "crossing" it; it does not prohibit "driving on" or "touching" it. Manual of Uniform Traffic Control Devices ("MUTCD") Section 3A.06(B) (Jan. 13, 2012).

{¶ 4} Therefore, we reverse the judgment of the Twelfth District Court of Appeals and remand this matter to that court to address the issue raised there by appellee, the state of Ohio: whether the State Highway Patrol trooper reasonably believed that appellant, Ryan Turner, violated the law when he drove on the fog line, rendering the trooper's stop of Turner lawful.

## I. Facts and Procedural Background

{¶ 5} A State Highway Patrol trooper stopped Turner as Turner was driving on Old State Route 74, a two-lane, two-way road in Clermont County, for failing to drive within the marked lanes in violation of R.C. 4511.33. As a result of the

stop, Turner was charged with committing a marked-lanes violation under R.C. 4511.33 and operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (d).

{¶ 6} Turner filed a motion to suppress the evidence of driving under the influence of alcohol that had been obtained during the traffic stop, arguing that the trooper did not have probable cause or a reasonable and articulable suspicion to initiate the stop. The trooper testified that he had observed the two right-side tires of Turner's vehicle touch the fog line on the right side of the roadway once and that that touch can be seen on the dash-cam video.

{¶ 7} Old State Route 74 is visible in the relevant portion of the dash-cam video. The yellow center lines of the road are visible. The lane in which Turner was traveling is marked by a single solid yellow longitudinal line; next to that line is a single broken yellow longitudinal line. On both sides of Old State Route 74, a single solid white longitudinal line is present, which the trooper referred to in his testimony as the fog line.

{¶ 8} After a hearing, the trial court granted the motion to suppress, concluding that a reasonable, prudent police officer would not have believed that a marked-lanes violation had occurred. The trial court stated that although it could not see the one-time touch of the fog line by Turner's tires in the dash-cam video, it would take the trooper at his word that Turner's tires had touched the line. It concluded that touching the line does not establish probable cause that a violation of R.C. 4511.33(A)(1) has occurred.

{¶ 9} The Twelfth District reversed the judgment of the trial court in a split decision. 2019-Ohio-3950, 145 N.E.3d 985. Construing the plain language of R.C. 4511.33(A)(1), the majority determined that a driver "is not fully inside or 'entirely within' a single lane of traffic" when driving on a marked lane line, thereby rejecting the holdings of those courts of appeals that had determined that merely touching the lane line did not violate R.C. 4511.33(A)(1). *Id.* at ¶ 19. Having

determined that Turner violated R.C. 4511.33(A)(1), the court overruled the decision of the trial court and held that the trooper had "reasonable and articulable suspicion" to stop the vehicle for a traffic violation. *Id.* at ¶ 22. Disposing of the appeal on this basis, the majority declined to address the state's alternative argument that the stop was lawful because the officer had made a reasonable mistake of law. *Id.*

{¶ 10} The dissenting judge construed R.C. 4511.33(A)(1) by relying on the definition of "traffic control devises" in R.C. 4511.01(QQ) and the requirement in R.C. 4511.09 that the Ohio Department of Transportation ("ODOT") adopt a manual for a uniform system of traffic-control devices. *Id.* at ¶ 25-26 (M. Powell, J., dissenting). Because the MUTCD only " 'discourages or prohibits crossing' " of the solid white line, and not touching or driving upon the line, the dissent concluded that a marked-lanes violation under R.C. 4511.33(A)(1) occurs only when a driver crosses the solid white line. *Id.* at ¶ 28, quoting MUTCD, Section 3A.06B, at 390.

## II. Conflict Cases

{¶ 11} The Twelfth District certified its judgment as being in conflict with judgments from the First, Third, Fifth, Sixth, and Eleventh District Courts of Appeals, which held that the touching or driving on the fog line does not constitute a violation of R.C. 4511.33(A)(1). *See State v. Williams*, 1st Dist. Hamilton No. C-960958, 1997 Ohio App. LEXIS 3467, *4-5 (Aug. 1, 1997) (officer did not have probable cause to believe that a marked-lanes violation occurred when vehicle tires were directly on but not over the fog line); *State v. Smith*, 2017-Ohio-5845, 94 N.E.3d 1058, ¶ 25 (3d Dist.) (officer lacked reasonable, articulable suspicion to stop vehicle for driving on top of, but not crossing, the white line); *State v. Marcum*, 2013-Ohio-2652, 993 N.E.2d 1289, ¶ 17 (5th Dist.) (driving on the white fog line was not a marked-lanes violation); *State v. Parker*, 6th Dist. Ottawa No. OT-12-034, 2013-Ohio-3470, ¶ 7, 10 (motorist does not commit a marked-lanes violation

by traveling on the fog line); *State v. Baker*, 6th Dist. Wood No. WD-13-074, 2014-Ohio-2564, ¶ 9 (officer lacked reasonable, articulable suspicion to stop vehicle for touching the white fog line); and *State v. Kneier*, 11th Dist. Portage No. 2015-P-0006, 2015-Ohio-3419, ¶ 5, 17 (driving over the top of the fog line did not provide officer with probable cause for marked-lanes violation).

{¶ 12} However, we find that the other cases certified as being in conflict with this one are in fact not. *See State v. Franklin*, 5th Dist. Licking No. 11-CA-128, 2012-Ohio-3089.¶ 21 (trooper lacked reasonable suspicion to stop motorist when vehicle's tires touched the far right line of the double solid centerline); *State v. Richardson*, 5th Dist. Delaware No. 00-CA-A-01-003, 2000 WL 1055917 (July 14, 2000) (trooper lacked reasonable suspicion to stop motorist when his vehicle's tires drove on top of centerline four times); *State v. Konneh*, 6th Dist. Wood No. WD17-007, 2018-Ohio-1239, ¶ 26 (trooper had reasonable suspicion to stop motorist when his vehicle's tires completely crossed the lines separating the middle lane from the right lane); and *State v. Grigoryan*, 8th Dist. Cuyahoga No. 93030, 2010-Ohio-2883, ¶ 25 (police officer lacked reasonable suspicion to stop motorist whose vehicle's tires drove on the left yellow edge line). These cases did not concern a vehicle's driving on or touching the fog line, and our holding today does not address them.

### III. The Parties' Arguments

{¶ 13} Turner argues that a majority of Ohio's appellate courts have held that a marked-lanes violation does not occur unless the driver crosses the marked lane line. Therefore, touching a marked lane line does not provide either a reasonable, articulable suspicion or probable cause to permit a traffic stop. The state points to the language "entirely within" in R.C. 4511.33(A)(1) and asserts that a vehicle's tires cannot touch any lane line and be entirely within a single lane of traffic. To hold otherwise, it argues, would allow drivers in each lane of travel to enter into the same space.

## IV. Analysis

### A. Standard of review

{¶ 14} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). But the appellate court must decide the legal questions de novo. *Burnside* at ¶ 8.

{¶ 15} The trial court accepted as true the trooper's assertion that Turner's tires touched the white fog line. The parties do not dispute this factual finding. Therefore, our focus is the legal question of whether touching the solid white longitudinal line—the fog line—violates R.C. 4511.33(A)(1).

### B. R.C. 4511.33(A)(1) is unambiguous: the single solid white longitudinal line at issue here marks only the edge of the roadway and the statute merely "discourages or prohibits crossing" it

{¶ 16} This court has not previously passed upon the question presented here. In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 16, we considered only whether a vehicle's drifting back and forth across the edge of the roadway line was a violation of R.C. 4511.33(A)(1), giving an officer a "reasonable and articulable suspicion" to stop the driver.

{¶ 17} To resolve the issue before the court, we turn, once again, to statutory construction. In construing a statute, we do not ask "what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000).

{¶ 18} To determine the plain meaning of a statute, a court relies on the definitions provided by the legislative body, because a "definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others." *Fox v. Std. Oil Co. of New Jersey*, 294 U.S. 87, 96, 55 S.Ct. 333, 79 L.Ed. 780 (1935). When a term is not defined in the statute, we use the term's plain and ordinary meaning. *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996). And "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.C. 1811, 100 L.Ed.2d 313 (1988).

{¶ 19} R.C. 4511.33(A)(1) is part of an extensive statutory scheme regulating the operation of motor vehicles on Ohio roads. The meaning of the roadway marking at issue here, and the vehicular movement permitted by that roadway marking, becomes unmistakable when R.C. 4511.33(A)(1) is considered in the context of the definitions in R.C. 4511.01 and its place within the statutory and regulatory scheme.

{¶ 20} R.C. 4511.09 gives ODOT authority to "adopt a manual for a uniform system of traffic control devices," which ODOT did, the MUTCD. R.C. 4511.10 gives ODOT authority to "place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are *necessary to indicate and to carry out sections 4511.01 to 4511.78* and 4511.99." (Emphasis added.) "Traffic control devices" are defined as "a flagger, sign, signal, *marking*, *or other device used to regularly warn, or guide traffic*." (Emphasis added.) R.C. 4511.01(QQ). Therefore, because the legislature has given ODOT authority to regulate marked lanes of traffic under R.C. 4511.09, we turn to the MUTCD for guidance.

{¶ 21} Markings on roadways serve an important function by "providing guidance and information" to the motoring public. MUTCD, Section 3A.01.01. "Major marking types include pavement and curb markings." *Id*. at Section 3A.02.02. And "**[e]ach standard marking shall be *used only to convey the meaning prescribed for that marking in* the OMUTCD.**" (Boldface sic and emphasis added.) *Id*. at Section 3A.02.01.

{¶ 22} Markings are required to be yellow, white, red, blue, or purple in color and must conform to standard highway colors. *Id*. at Section 3A.05.01. White markings used for longitudinal lines delineate either "***A. The separation of traffic flows in the same direction, or B. The right-hand edge of the roadway***." (Boldface sic and emphasis added.) *Id*. at Section 3A.05.02. Yellow markings used for longitudinal lines delineate either "**A. The separation of traffic traveling in opposite directions, B. The left-hand edge of the roadways of divided highways * * *, or C. The separation of two-way left turn lanes * * *.**" (Boldface sic.) *Id*. at Section 3A.05.03.

{¶ 23} The MUTCD sets forth the general function of longitudinal lines: "**A. A double line indicates maximum or special restrictions, B. *A solid line discourages or prohibits crossing (depending on the specific application),* C. A broken line indicates a permissive condition, and D. A dotted line provides guidance or warning of a downstream change in lane function.**" (Boldface sic and emphasis added.) *Id*. at Section 3A.06.01. A normal single line is four to six inches wide, and a broken line is a normal line with segments separated by gaps. *Id*. at Section 3A.06.02(A) and (D).

{¶ 24} A yellow center line delineates a "**separation of traffic lanes that have opposite directions of travel on the roadway**." (Boldface sic.) *Id*. at Section 3B.01.01. A yellow center line might mark a two-lane, two-way roadway in three ways. *Id*. at Section 3B.01.04. Relevant to this case, one of those options is to provide

**[o]ne-direction no-passing zone markings consisting of a double yellow line, one of which is a normal broken yellow line and the other is a normal solid yellow line where crossing the center line markings for passing with care is permitted for the traffic traveling adjacent to the broken line, but is prohibited for traffic traveling adjacent to the solid line.**

(Boldface sic.) *Id.* at Section 3B.01.04(B).

{¶ 25} R.C. 4511.33, entitled "Rules for driving in marked lanes," provides in division (A)(1) that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic, * * * [a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." The statute has two separate components. R.C. 4511.33(A) establishes that clear markings on a roadway determine whether two or more lanes are present. And R.C. 4511.33(A)(1) then requires a vehicle to stay as nearly as possible within that lane unless the driver can determine that he can move from that lane safely. The road markings, as set forth in the MUTCD, define the bounds of the "clearly marked lanes" for the purposes of R.C. 4511.33(A)(1).

{¶ 26} The lane of Old State Route 74 in which Turner was traveling when the trooper stopped him is marked by a single solid yellow longitudinal line; next to that line is a single broken yellow longitudinal line. On both sides of Old State Route 74, a single solid white longitudinal line—the fog line—is present.

{¶ 27} As applied to these facts, the "clearly marked lanes for traffic" were set by the yellow center lines. The single solid yellow longitudinal line on Turner's side of the road and the single broken yellow longitudinal line on the other side of the road established a two-lane, two-way roadway. A single solid white

9

longitudinal line may establish a lane for traffic flowing in the same direction, but based on the dash-cam footage and the testimony of the trooper, no single solid white longitudinal line was marking another lane flowing in the same direction.

{¶ 28} Under the MUTCD, the only other use of a single solid white longitudinal line is to establish the right-hand edge of the roadway. The trooper plainly understood the markings on the pavement and that the single solid white longitudinal line on the right-hand side of the roadway marked the edge of the roadway because the trooper referred to the marking as the fog line.

{¶ 29} As established in the MUTCD, a standard marking can "**be used only to convey the meaning prescribed for that marking**" in the MUTCD. (Boldface sic.) *Id*. at Section 3A.02.01. Therefore, because the single solid white longitudinal line as used on this two-lane, two-way roadway served only to mark the right-hand edge of the roadway and because that marking merely discourages or prohibits *crossing* it, not driving on it or touching it, Turner's touching of the fog line was not a violation of R.C. 4511.33(A)(1).

{¶ 30} It is the placement of traffic-control devices—the markings—that carry out the requirements of "sections 4511.01 to 4511.78 and 4511.99 of the Revised Code." R.C. 4511.10. Roadway markings, therefore, serve to provide "guidance and information" to the motoring public as to what actions are permitted or prohibited on the roadway under sections R.C. 4511.01 to 4511.78 and 4511.99 of the Revised Code. MUTCD at Section 3A.01.01.

{¶ 31} Ohioans are expected to know the meaning of roadway markings contained in the MUTCD because the enforcement of certain Ohio traffic laws is tied to the meanings of the markings contained therein. Most significantly, R.C. 4511.12(A) prohibits the driver of a vehicle from "*disobey[ing] the instructions of any traffic control device* placed in accordance with this chapter, unless at the time otherwise directed by a police officer." (Emphasis added.) As defined in R.C. 4511.01(QQ), traffic-control devices include markings. R.C. Chapter 4511 does

not list the markings that drivers are expected to obey. Instead, the MUTCD describes the duties and permissive actions that the markings convey.

{¶ 32} Other statutes rely on the MUTCD to flesh out their meanings. R.C. 4511.17(A)(1) forbids "[k]nowingly" defacing, damaging, or improperly tampering with "*any traffic control device,*" and R.C. 4511.17(A)(2) prohibits "driv[ing] upon or over any freshly applied pavement marking material on the surface of a roadway while the marking [material] is in an undried condition and is marked by flags, markers, signs, or other devices intended to protect it." (Emphasis added.) These statutes require knowledge of what constitutes a traffic-control device.

{¶ 33} Certain permissive provisions of R.C. 4511.25—which requires vehicles to be driven on the right-hand side of the roadway in most circumstances— rely on the meaning of traffic-control devices to inform drivers when they can travel on other than the right-hand side of the roadway. R.C. 4511.25(A)(5) requires travel on the right-hand side of the roadway unless "otherwise directed by a * * * traffic control device." The statute does not describe those traffic-control devices— that is left to the MUTCD. R.C. 4511.25(C) allows a vehicle to be driven left of the center line of a roadway having four or more lanes of traffic and providing for two-way movement of traffic "when authorized by official traffic-control devices designating certain lanes to the left of the center of the roadway for use by traffic not otherwise permitted to use the lanes." R.C. 4511.25(A)(1) allows a vehicle to be driven on other than the right-hand side of the roadway when passing another vehicle proceeding in the same direction, but such a movement is limited by any traffic-control device prohibiting passing in that section of the roadway. *See* R.C. 4511.12.

{¶ 34} R.C. 4511.27 governs the overtaking and passing of vehicles proceeding in the same direction. That provision does not define or designate which roadways drivers may overtake or pass on. Overtaking and passing indicators are established by the traffic-control devices—the roadway markings.

*See* MUTCD at Sections 3B.01, Yellow Center Line Pavement Markings and Warrants; 3B.02, No-Passing Zone Pavements Marking and Warrants; and 3B.04, White Lane Pavement Markings and Warrants.

{¶ 35} Many roadway markings have special purposes, and disobeying them gives rise to different violations of Ohio's traffic laws, depending on what they signify. The single solid white longitudinal line on the right-hand side of Old State Route 74 discourages or prohibits the crossing of that line but does not prohibit the mere touching of it. Because Turner did not cross the single solid white longitudinal line—the fog line—and driving on it or touching it is not prohibited under R.C. 4511.33(A)(1), no violation occurred.

{¶ 36} This interpretation of R.C. 4511.33(A)(1) is consistent with the greater weight of authority in jurisdictions across the nation that touching the single solid white longitudinal line on the right-hand side of the roadway does not constitute a violation of R.C. 4511.33(A)(1). *See* Gee*, "U Can't Touch This" Fog Line: The Improper Use of A Fog Line Violation as a Pretext for Initiating an Unlawful Fourth Amendment Search and Seizure,* 36 N.Ill.U.L.Rev. 1, 14 (2015) (the majority of jurisdictions hold that nominally encroaching upon traffic-control lines does not constitute a marked-lanes violation). *See People v. Mueller*, 2018 IL App (2d) 170863, 127 N.E.3d 861, ¶ 28 (officer did not have reasonable suspicion that defendant had violated the statute for improper lane usage when vehicle's tires touched the fog line and yellow center line three times at night on curved road); *United States v. Warfield*, 727 Fed.Appx. 182, 186 (6th Cir.2018) (officer lacked probable cause to stop defendant's vehicle, as merely touching a lane line is not a violation of Ohio's marked-lanes statute); *State v. Neal,* 159 Idaho 439, 447, 362 P.3d 514 (2015) (twice driving onto but not across fog line does not violate lane-use statute); *United States v. Wendfeldt*, 58 F.Supp.3d 1124, 1130 (D.Nev.2014) (a vehicle's driving onto the fog line several times did not provide officer with reasonable suspicion to justify traffic stop for improper lane usage); *United States*

12

*v. Colin*, 314 F.3d 439, 444 (9th Cir.2002) (based on the " 'totality of the circumstances,' " a vehicle's touching fog line and the solid yellow line did not provide officer with reasonable suspicion to stop defendant's vehicle, quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Rowe v. State*, 363 Md. 424, 441, 769 A.2d 879 (2001) (vehicle's crossing and then touching the white line bordering the shoulder did not violate marked-lanes statute); *State v. Cerny*, 28 S.W.3d 796, 801 (Tex.App.2000) (marked-lanes statute not violated when vehicle touched the white shoulder line and wove somewhat within its own lane of traffic); *Crooks v. State*, 710 So.2d 1041, 1043 (Fla.Dist.Ct.App.1998) (vehicle's crossing fog line three times did not constitute violation of marked-lanes statute when there was no evidence that driver failed to ascertain that he could do so safely); *and State v. Lafferty*, 291 Mont. 157, 1998 MT 247, 967 P.2d 363, ¶ 14, *overruled in part on other grounds, State v. Flynn*, 359 Mont. 376, 2011 MT 48, 251 P.3d 143, ¶ 12 (crossing fog line twice and driving on it once did not violate marked-lanes statute, which applies only to changes between marked lanes).

## V. Conclusion

{¶ 37} We hold, based on the plain language of R.C. 4511.33(A)(1), the definitions set forth in R.C. 4511.01, and the statutory scheme as a whole, that the single solid white longitudinal line on the right-hand edge a roadway—the fog line—marks the edge of the roadway and that such a marking merely "discourages or prohibits" a driver from "crossing" it, not "driving on" or "touching" it. MUTCD Section 3A.06(B).

{¶ 38} We accordingly answer the certified-conflict question, as modified, in the negative, reverse the judgment of the Twelfth District Court of Appeals, and remand this matter to that court to address the argument raised by the state of Ohio: whether the trooper's reasonable mistake of law validated the stop.

Judgment reversed

and cause remanded.

FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J.

_____

**FISCHER, J., dissenting.**

{¶ 39} Because I would conclude that the plain language of R.C. 4511.33(A) obviates the need to consult the Ohio Manual of Uniform Traffic Control Devices ("MUTCD") and dictates that in order for a vehicle to remain "within a single lane or line of traffic" on a roadway that is "clearly marked," the driver cannot drive on those lane lines, I respectfully must dissent. I would hold that an officer has a reasonable and articulable suspicion to conduct a traffic stop of a vehicle for a marked-lanes violation under R.C. 4511.33(A)(1) when the officer observes the tires of a vehicle driving on but not across a marked lane line.

### I. Legal Analysis

{¶ 40} In a Billboard Hot 100 single recorded and released by his band in 1980, Cleveland's Michael Stanley sang, "Thank God for the man who put the white lines on the highway." *See* John Soeder, *Three decades after "Heartland," Michael Stanley is alive and well in "Shadowland,"* (Jan. 12, 2019), https://www.cleveland.com/popmusic/2009/12/three_decades_after_heartland.html (accessed Oct. 1, 2020) [https://perma.cc/A5CG-8TV7]; Michael Stanley, *The 80's*, http://www.michaelstanley.com/THE_80S.html (accessed Oct. 1, 2020) [https://perma.cc/R6FG-M7W3]; Billboard, *The Hot 100 Chart: Week of April 11, 1981*, https://www.billboard.com/charts/hot-100/1981-04-11 (accessed Oct. 1, 2020) [https://perma.cc/G77P-9H5Z]. This case is not about the Ohioans who paint the white lines on the state's roadways, but rather the motorists who drive on those white lines. Specifically, the issue before the court in this certified conflict is whether an officer has a reasonable and articulable suspicion to conduct a traffic

stop for a R.C. 4511.33(A)(1) marked-lanes violation when the officer observes the tires of a vehicle driving on but not across a marked lane line.

### A. Reasonable suspicion versus probable cause

{¶ 41} I begin my analysis by noting a procedural quirk in this case. In his motion to suppress, appellant, Ryan Turner, argued that the State Highway Patrol Trooper did not have probable cause or a reasonable and articulable suspicion to initiate the traffic stop. In granting Turner's motion to suppress, the trial court concluded that "a reasonably prudent officer who is familiar with [R.C.] 4511.33(A)(1) would not believe that he had probable cause to stop the defendant's vehicle under these circumstances." On appeal, the state raised a single assignment of error: "The trial court erred in granting appellee's motion to suppress, as the trooper had reasonable, articulable suspicion to believe appellee had committed a marked lanes violation under Section 4511.33(A)(1)." 2019-Ohio-3950, 145 N.E.3d 985, ¶ 8. The Twelfth District Court of Appeals did not address whether probable cause existed, but rather resolved the appeal by reversing based upon its conclusion that there was "reasonable and articulable suspicion for the traffic stop." *Id.* at ¶ 22. I acknowledge that probable cause and reasonable and articulable suspicion are distinct concepts. *See State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. Given the procedural posture of this case, the substance of the Twelfth District's decision, and the limited scope of the certified-conflict question that we accepted for review, my analysis is therefore confined to whether reasonable and articulable suspicion existed.

### B. Legal background

{¶ 42} "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "To justify a particular intrusion, the officer must demonstrate 'specific and articulable facts which, taken

together with rational inferences from those facts, reasonably warrant that intrusion.' " *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 11, quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[I]f an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Mays* at ¶ 8.

{¶ 43} R.C. 4511.33(A), which makes it a traffic violation to drive outside a lane, provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶ 44} This court most recently analyzed R.C. 4511.33(A) in *Mays*. In that case, the court was presented with a conflict question raising the issue whether the Constitution permits a police officer to stop a motorist whom he or she witnesses cross a right white edge line without further evidence of erratic driving. 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 1. This court held that an officer may do so. *Id.*

{¶ 45} In *Mays*, the only evidence of erratic driving witnessed by the officer was the defendant's crossing of the right fog line twice by approximately one tire width. *Id.* at ¶ 2. This court rejected Mays's argument that absolute observance of

lane markings is not required by R.C. 4511.33(A) and that driving across the white edge line twice does not constitute a violation of the statute. *Id.* at ¶ 15-16. This court stated, "When an officer observes a vehicle driving back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33." *Id.* at ¶ 16.

{¶ 46} Thus, *Mays* stands for the proposition that an officer has a reasonable and articulable suspicion to conduct a traffic stop of a motor vehicle for a marked-lanes violation under R.C. 4511.33(A)(1) when the officer observes the tires *cross* a marked lane line. *Mays*, however, did not address the question before the court here: Does a reasonable and articulable suspicion to conduct a traffic stop exist when the officer observes the tires of a vehicle drive *on* a marked lane line?

*C. Reasonable suspicion to conduct a traffic stop exists when an officer observes a vehicle's tires touch a lane line*

{¶ 47} When we construe a statute, legislative intent is our primary concern. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 8. To determine legislative intent, we first look to the plain language of the statute, and if that language is unambiguous and definite, we apply it as written. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18, citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 11.

{¶ 48} "To discern legislative intent, we read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 137 Ohio St.3d 257, 2013-Ohio-4654, 998 N.E.2d 1124, ¶ 15. " '[S]ignificance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act.' " *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus.

{¶ 49} The Revised Code does not define "lane." Nor, for purposes of R.C. 4511.33(A)(1), does it distinguish among various types of lane lines (e.g., a solid yellow line, a solid white line, a dashed white line). Thus, the Revised Code does not specify what it means for a driver to fail to drive "entirely within a single lane or line of traffic." Despite the lack of statutory definitions, I conclude that this case can be resolved by looking solely to the plain language of the statute.

{¶ 50} R.C. 4511.33(A)(1) provides that when a roadway has been "divided into two or more clearly marked lanes for traffic" or when traffic within a municipal corporation "lawfully mov[es] in two or more substantially continuous lines in the same direction," a vehicle on the roadway "shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic."

{¶ 51} The statute presupposes a few things. First, there is a single roadway. Second, there are "clearly marked" lanes (or lines of traffic) on that single roadway. Third, the vehicle must be driven, as nearly as practicable, *within* one of those lanes (or lines of traffic).

{¶ 52} According to the clear language of the statute, then, each lane is a distinct, discrete unit. There can be no overlapping of lanes, because those lanes must be "clearly marked." The interpretation set forth by Turner (and the majority of the appellate districts) ignores this fact, because any other interpretation illogically treats a lane line as a space that simultaneously exists in multiple lanes, rendering the lanes not "clearly marked." Instead, a part of the roadway can belong to multiple lanes, making unclear where one lane ends and another starts and who might have the right-of-way.

{¶ 53} To avoid this flawed interpretation, we must treat "entirely within a single lane or line of traffic" as meaning that a driver who drives on the lines that establish the lane boundaries drives outside the lane or line of traffic. Thus, to honor the language of R.C. 4511.33(A), I would adopt the Twelfth District's reading of the statute and that advocated by the state and conclude that in order to

drive "entirely within a single lane or line of traffic," a driver must stay inside the inner edges of the lane lines. In other words, a driver may not drive on the lane lines.

{¶ 54} I note again that while lines marking the boundaries between lanes and the lines marking the edge of a roadway serve different functions, the relevant statute, R.C. 4511.33(A)(1), unambiguously makes no distinction among the various types of roadway markings. Because the statute makes no such distinction, the statute applies uniformly to each type of lane line. Thus, for example, a driver drives outside the lane or line of traffic when the vehicle's tires touch the right fog line or the center line separating two directions of traffic. Treating the various types of lane lines uniformly not only mirrors the statute, which does not make any distinctions, but also provides a uniform, common-sense rule: in order to stay "entirely within a single lane or line of traffic," R.C. 4511.33(A)(1), a vehicle's tires cannot touch a lane line, regardless of the type of lane line.

{¶ 55} I further note that I would not find the "as nearly as is practicable" language of R.C. 4511.33(A)(1) to compel any different result. As this court explained in *Mays*, "[t]he phrase 'as nearly as is practicable' does not give the driver the option to remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 18, quoting R.C. 4511.33(A)(1). Rather than being a factor in the analysis whether an officer had reasonable suspicion, the "as nearly as is practicable" language provides a driver with a legal defense to a charge of driving outside the lane:

> R.C. 4511.33 does provide for certain circumstances in which a driver can cross a lane line without violating the statute. However, the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our

analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.

*Id.* at ¶ 17. Thus, I conclude that the "as nearly as is practicable" language of R.C. 4511.33(A)(1) does not factor into our analysis in this case.

### D. *The MUTCD is not relevant to the analysis of this case*

{¶ 56} Because I reach this conclusion based on the plain language of the statute, I, under our precedents, must avoid consulting any administrative rules or regulations, such as the MUTCD. If a statute's meaning is plain, we do not consider an administrative agency's interpretation or implementation of that statute. *See State ex rel. Morris v. Indus. Comm.*, 134 Ohio St. 380, 381-382, 17 N.E.2d 741 (1938); *In re Application of Black Fork Wind Energy, L.L.C.*, 156 Ohio St.3d 181, 2018-Ohio-5206, 124 N.E.3d 787, ¶ 21. Indeed, as the Supreme Court of the United States has succinctly put it, "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' " *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

{¶ 57} It is significant that this "first canon" requires us to end the judicial inquiry when the words of the statute are unambiguous. This canon does not provide that the judicial inquiry ends when the words of the statute, considered in light of administrative rules or regulations adopted by an executive administrative agency, are unambiguous. As this court has explained, it is improper for an administrative agency to alter the meaning of a statute if that statute is unambiguous. *See In re VHA Diagnostic Servs., Inc.*, 65 Ohio St.3d 210, 214, 602 N.E.2d 647 (1992) (explaining, in construing a particular statute, that "[t]he words

'after receiving' are clear and unambiguous. It is improper for the administrative agency to change the words 'after receiving' to, in effect, 'after determining it has received' "). It follows that when a statue is unambiguous, our inquiry should end, and we should not look to sources outside that statute to determine what the statute means.

{¶ 58} I acknowledge that R.C. 4511.09 grants ODOT authority to issue the MUTCD and that R.C. 4511.10 grants ODOT authority to place and maintain traffic-control devices in conformity with the MUTCD as necessary to carry out the requirements of R.C. 4511.33. But the MUTCD cannot as a matter of law alter unambiguous language of the Revised Code, and the General Assembly has not enacted the portions of the MUTCD cited in the majority opinion and incorporated those provisions into the Revised Code.

{¶ 59} If the language of R.C. 4511.33(A)(1) had been found ambiguous either in the analysis of the majority opinion or in my own analysis, then it would have been appropriate to consult the MUTCD to resolve that ambiguity. Based on my analysis, however, (and as noted in the majority opinion) the statutory language is plain and unambiguous. Having concluded that the statute's meaning is plain, I conclude that it is unnecessary for this court to consult any sources beyond R.C. 4511.33(A)(1) to resolve this appeal.

## II. Conclusion

{¶ 60} Based on the plain language of R.C. 4511.33(A)(1), I respectfully dissent from the majority decision and would hold that an officer has reasonable and articulable suspicion to conduct a traffic stop of a motor vehicle for a marked-lanes violation under R.C. 4511.33(A)(1) when the officer observes the tires of a vehicle driving on but not across a marked lane line. I would accordingly answer the certified-conflict question in the affirmative and affirm the judgment of the Twelfth District Court of Appeals.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

D. Vincent Faris, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

Faris & Faris, L.L.C., and Zachary F. Faris, for appellant.

Paul W. Flowers Co., L.P.A., and Louis E. Grube, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

_____